UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | CASE NO. 3:19-CR-206-RGJ |
| | ) | |
| CYNTHIA ALLEN, et al. | ) | |
|     Defendant | ) | **Electronically Filed** |

### DEFENDANT ALLEN'S MOTION FOR EARLY PRODUCTION OF JENCKS MATERIALS UNDER AN ORDER OF PROTECTION

Comes the Defendant, CYNTHIA ALLEN, by counsel, pursuant to the Fifth, Sixth, and Eighth Amendments to the United States Constitution, *Brady v. Maryland*, 373 U.S. 83 (1963), and Federal Rules of Criminal Procedure 16 and 26.2, and respectfully moves this court to enter an appropriate order for the production of evidence under Fed. R. Crim. P. Rule 26.2 and 18 U.S.C. § 3500. The production and disclosure of the evidence requested can be accomplished pursuant to Rule 16(d)(1), under an appropriate protective order. As grounds, the Defendant states as follows:

### BACKGROUND

The Defendant, Cynthia Allen, stands charged in the Superseding Indictment [DN 87] with 18 U.S.C. §1513(a)(1)(A) and 2: Retaliating Against a Witness by Killing; 18 U.S.C. §1513(a)(1)(A) and §1513(a)(1)(C) and 2: Tampering with a Witness by Killing; 18 U.S.C. §1121(a)(2) and 2: Killing a Person Aiding a Federal Investigation; and 18 U.S.C. §373(a) and 2: Solicitation to Commit a Crime of Violence. Ms. Allen is currently facing a sentence of death or life imprisonment if convicted of any of the first three counts of the Superseding Indictment.

1

This Court has previously declared the instant case complex [*See* DN 30]. The government has provided voluminous amounts of discovery. Based upon Ms. Allen's defense team's review of this massive amount of discovery, it is believed that there exists currently undisclosed evidence that the government will intend to present at trial through the testimony of Confidential Informants known to the Court and Confidential Informants unknown to the Court. Ms. Allen's defense team has a good faith belief that the attendant discovery for many of these witnesses will be voluminous. Thus, the amount of currently undisclosed discovery that would be required to review, evaluate, and investigate would be a monumental undertaking during trial and unfairly prejudicial to Ms. Allen. The defense submits that production of such discovery well in advance of trial would be judicially economical and more importantly, ensure that Ms. Allen's Constitutional rights are not violated. Producing these materials under an appropriate protective order will satisfy the reasonable concerns of the United States for the safety of its witnesses.

Under 18 U.S.C. § 3500(e), the Jencks Act, a "statement" of any witness called by the United States means:

1. a written statement made by the witness and signed or otherwise adopted or approved by him;
2. a stenographic, mechanical, electrical or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or
3. a statement, however taken or recorded, or a transcription thereof, made by said witness to a grand jury.

If the United States does not deliver a witness's *Jencks* statement to a defendant in the manner required by the Code, the court may strike from the record the witness's testimony or declare a mistrial, 18 U.S.C. §3500(d).

By way of background, in *Jencks v. United States*, 353 U.S. 657 (1957), the Court held "that the criminal action must be dismissed when the Government, on the ground of privilege,

elects not to comply with an order to produce, for the accused's inspection and for admission in evidence, relevant statements or reports in its possession of government witnesses touching the subject matter of their testimony at trial." *Id*. at 672. In reaching its decision, the Court placed considerable reliance upon *United States v. Reynolds*, 345 U.S. 1 (1953), which in turn, relied upon *United States v Beekman*, 155 F.2d 580 (2d Cir. 1946)(Frank, J.); and *United States v. Andolschek*, 142 F.2d 503 (2d Cir. 1944) (L. Hand, J.), summarizing the essence of those cases as follows: "The rationale of [those] cases is that, since the Government which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privilege to deprive the accused of anything which might be material to his defense." *Reynolds*, 345 U.S. at 12.

Congress responded to the *Jencks* decision by enacting 18 U.S.C. §3500, which, in its final enactment, limited the release of the statements of government witnesses until after they testified at trial. Notwithstanding the Act's limitations on the timing of the statement's disclosure, the intent of the Act is to ensure a defendant's right to confront his or her accusers.

Additionally, in *Brady v. Maryland,* 373 U.S. 83 (1963)*,* the Court held that the suppression of evidence favorable to an accused violates due process, irrespective of the good or bad faith of the prosecutor, where such evidence is material to the guilt or punishment of the accused.

The failure of the government to produce exculpatory evidence may or may not fall within the confines of the Jencks Act. In some cases, the production of documents must be made at a time prior to that required by the Jencks Act. For example, the Brady rule may require the prosecutor to disclose grand jury testimony prior to trial, if the information is exculpatory, as well as other Brady material.

## **EXAMPLES OF THE SCOPE OF JENCKS MATERIAL**

In *United States v. Ellenbogen*, 341 F. 2d 893 (2nd Cir. 1965), a prosecution for bribing a purchasing agent of the General Services Administration and for conspiring to commit similar offenses, the purchasing agent pleaded guilty prior to the trial and was the principal witness for the government in the defendant's case. The trial court refused to allow the production of a signed sworn statement of the purchasing agent, in which he explained in detail his similar unlawful dealings with bidders other than the defendant, on the ground that such statement had nothing to do with the present case. The court did this even though on direct examination the agent was specifically examined by the government on the point of these other dealings, as covered in the requested statement.

The Second Circuit held that this was error. Noting that prior statements of a witness that "[relate] generally to the events and activities testified to" by him must be produced via the Jencks Act, the court said that since the statement in question related to the subject matter as to which the witness had testified, "the statute leaves no room for the trial court, nor for [the present court], to speculate as to how useful this statement would be for purposes of cross-examination or how important such cross-examination would be to the defendant's case." *Ellenbogen,* 341. F.2d at 894.

In *United States v. Borelli*, 336 F. 2d 376, *cert. den.,* 379 U.S. 960, 13 L. Ed. 2d 555, 85 S. Ct. 647 (1964), when an accomplice had testified for the prosecution at the trial of the defendant, it was held that the refusal to permit the production of a letter written by the accomplice to the government, in which he offered his assistance to the government in return for special consideration for himself, was error where such refusal was based on the ground that the letter did not "relate" to the subject matter to which the accomplice had testified. The court said there was no reason why a statement that would support impeachment for bias and interest does not "relate"

to the witness' testimony as much as a statement permitting impeachment for faulty memory as was involved in *Rosenberg v. United States*, 360 U.S. 367 (1959), and that the word "relate" as used in the statute is not limited to a factual narrative. *Borelli* at 393.

### RECENT EXAMPLES OF CASES UTILIZING PROTECTIVE ORDERS FOR SENSITIVE DISCOVERY DOCUMENTS AND ALLOWING EARLY PRODUCTION OF JENCKS MATERIAL

The Defendant anticipates that the government intends to elicit testimony from witnesses that are described as Confidential Informants, and who, based on their assistance to the United States in this and other cases, have received or will receive *"special consideration"* for their testimony.

The Defendant's request for early production is not unique, particularly in cases with significant potential penalties. The particular nature of a prosecution may also qualify as a reason for early disclosure of witness statements, with the use of an individualized protective order.

An example may be found in a current case of national attention, *United States v. Trump, et. al.,* District Court for the Southern District of Florida (West Palm Beach Division) Case No. 23-CR-80101, in which Mr. Trump is charged with Willful Retention of National Defense Information, Conspiracy to Obstruct Justice, Withholding a Document or Record, Corruptly Concealing a Document or Record, Concealing a Document in a Federal Investigation, Scheming to Conceal and False Statements and Representations. These charges allege misconduct that involves the United States' national defense and contains documents, information and identities of a very sensitive nature. In this matter, the District Court entered a protective order on June 19, 2023, pursuant to Rule 16 for all "non-classified discovery" materials provided to defense counsel in conjunction with the government's obligation to disclose Brady information per the Due Process Protections Act [DN 16 & 27].

Although the alleged conduct in *Trump, supra,* does not carry the same potential penalties as the instant case, the public disclosure of evidence in that case could endanger the lives of many Americans and others. Ms. Allen should not be afforded less protection under the United States Constitution than those provided to Mr. Trump.

An example of the early agreed production of certain Jencks materials in this Circuit and in the Eastern District of Kentucky is the case of *United States v. Nantz*, Case No. 6:19-CR-16 (Southern Division at London), in a case alleging the murder of a government witness. By agreement grand jury transcripts were made available to defense attorneys far in advance of trial [DN 193 & 216]. Additionally, counsel for the defendant were allowed to personally review all the written discovery materials, in unredacted form, in the files of the United States Attorney Office before a trial date was scheduled.

Defendant Allen anticipates that Jencks material may very well be as voluminous as the initial discovery provided. Current Bates Numbering consists of four separate numbering systems including "USA-", "Allen-", "Allen, et. al." and "USA-Allen" Bates Numbers, which include multiple pages of sub documents attached to each Bates Numbering system.  The current known number of pages exceeds 342,000 documents and is not all-inclusive.

### **EARLY PRODUCTION OF JENCKS MATERIALS REQUESTED TO BE PRODUCED**

Defendant Cynthia Allen requests this Court to enter an appropriate order, utilizing the provisions of Fed. R. Crim. P. 16(d)(1), directing the United States to produce, for examination solely by her counsel and members of her defense team, the following:

- all witness interviews, interview recordings, and summaries of witness interviews;

- transcripts of grand jury proceedings relating to this case;

- all statements of "confidential human sources;"

- all Federal Bureau of Investigation 302's;

- all Results of Investigation summaries by any law enforcement agency;

- all Louisville Metro Police Department investigative letters.

Further, Ms. Allen requests a list of witnesses, documents, and exhibits intended to be introduced at trial.

Attached to this Motion as an exhibit filed under seal for the United States' and the Court's reference is a list of individuals that were either interviewed by the FBI or testified before the Grand Jury that have been identified by the Defendant as possible witnesses.

Respectfully submitted,

/s/LARRY D. SIMON
LARRY D. SIMON
Attorney for Defendant Cynthia Allen
American Life Building
471 West Main Street – Suite 200
Louisville, Kentucky 40202
(502) 589-4566

**CERTIFICATE**

It is hereby certified that a copy of the foregoing was filed electronically on this the 23rd day of August, 2023. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system.

/s/LARRY D. SIMON
LARRY D. SIMON